IN THE UNITED STATES DISTRICT COURT

OF THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ADAPTIX, INC. | § | |
| | § | |
| V. | § | No. 6:12-CV-17 |
| | § | |
| AT&T MOBILITY LLC, ET AL. | § | |

| | | |
|---|---|---|
| ADAPTIX, INC. | § | |
| | § | |
| V. | § | No. 6:12-CV-20 |
| | § | |
| PANTECH WIRELESS, INC. ET AL. | § | |

| | | |
|---|---|---|
| ADAPTIX, INC. | § | |
| | § | |
| V. | § | No. 6:12-CV-120 |
| | § | |
| CELLCO PARTNERSHIP d/b/a | § | |
| VERIZON WIRLESS, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The above-referenced cases were referred to the undersigned United States Magistrate Judge

for pre-trial purposes in accordance with 28 U.S.C. § 636.  Before the Court is the following pending

motion:

**Defendants' Motion for Summary Judgment on Preclusion Grounds (Cause No. 6:12cv17, Docket Entry # 340)(Cause No. 6:12cv20, Docket Entry # 330)(Cause No. 6:12cv120, Docket Entry # 317).**

The Court, having considered the relevant briefing and hearing arguments of counsel April 14, 2015, recommends the motion be **GRANTED.**

Although belied by the length of this Report and Recommendation, the issue in deciding whether Adaptix is precluded from asserting the remaining method claims of the '212 patent against the defendants in these cases is basically the same under all three grounds for preclusion.  The issue boils down to whether the same infringement theories or cause of action raised by Adaptix here were litigated in California.  The short answer is "yes."  The Court concludes Adaptix has lost the right to assert any method claims of the '212 patent against "essentially the same" use of LG and Pantech handsets. Without direct infringement claims against the carrier defendants, Adaptix's contributory infringement claims against the manufacturer defendants also fail.  The Court provides the following lengthy explanation of how it reached this conclusion.

## I.

## FACTUAL BACKGROUND

In 2012, Plaintiff Adaptix, Inc. ("Adaptix") filed multiple suits against AT&T Mobility LLC ("AT&T") and Cellco Partnership d/b/a Verizon Wireless ("Verizon")(collectively "Carrier Defendants"), asserting infringement of  United States Patent Nos. 6,947,748 ("'748 patent") and 7,454,212 ("'212 patent") (the "patents-in-suit"). In each case, Adaptix paired AT&T or Verizon with a different handset manufacturer co-defendant (*e.g.*, Apple, HTC, LG, or Pantech)("Manufacturer Defendants"). The Manufacturer Defendants in these cases are LG Electronics, Inc. and LG Electronics USA, Inc. ("LG Defendants") and Pantech Wireless, Inc. ("Pantech").

Both patents-in-suit are titled "OFDMA with Adaptive Subcarrier-Cluster Configuration and Selective Loading."  In general, the patents-in-suit relate to wireless communications, such as for cellular telephones.  In particular, the patents-in-suit relate to orthogonal frequency division multiple access ("OFDMA"), in which the communication frequency bandwidth is divided into smaller "subcarriers."  *See* '748 patent, 1:15-18.  The patents-in-suit disclose systems and methods for allocating subcarriers among multiple "subscribers," such as mobile cellular telephone units.

## II.

## THE CALIFORNIA CASES

The cases involving Manufacturer Defendants Apple and HTC (paired with AT&T or Verizon) were transferred to the Northern District of California in late March 2013. *See* NDCA Case Nos. 5:13-cv-01776, -1777, -1778, -1844, and -2023 (collectively the "California cases").  In the California cases, Adaptix accused AT&T and Verizon of infringement based on "making, using, offering for sale, selling and/or importing computerized devices including without limitation" certain 4G LTE devices manufactured by Apple and HTC. *See, e.g.*, 1777 Case, Docket Entry # 1 at ¶¶ 10, 15; 2023 Case, Docket Entry # 1 at ¶¶ 10, 14; 1776 Case, Docket Entry # 1 at ¶¶ 9, 14; 1844 Case, Docket Entry 1 at ¶¶ 9, 14. Adaptix accused these devices based on their compliance with the 3GPP Long Term Evolution ("LTE") standard.

The complaints in the California cases included allegations that AT&T and Verizon infringed by direct infringement and both forms of indirect infringement (contributory infringement and inducement).[1] *See, e.g.*, 1777 Case, Docket Entry # 1 at ¶¶ 10–11, 15–16; 1776 Case, Docket Entry

---

[1] Despite pleading both forms of indirect infringement in its complaint, Adaptix dropped its inducement theory and did not include contributory infringement in its infringement contentions. Adaptix later tried to amend its contentions after the deadline to add contributory

# 1 at ¶¶ 10, 15; 1844 Case, Docket Entry # 1 at ¶¶ 10, 15; 2023 Case, Docket Entry # 1 at ¶¶ 10–11; 15–16.  The accused products were advertised as employing LTE, and each accused product included a 4G LTE baseband.  Adaptix's infringement contentions were based on the accused devices' compliance with the 4G LTE industry standard. Adaptix's contentions stated there were "no material differences among the Accused Products for purposes of Plaintiff's infringement analysis." 2023 Case, Docket Entry # 257-12 ("Except as otherwise noted, there are no material differences among the Accused Products for purposes of ADAPTIX's infringement analysis. The functionality discussed applies to all Accused Products.").

On January 20, 2015, Judge Paul Grewal of the Northern District of California granted summary judgment that AT&T and Verizon did not directly infringe method claims 1, 8, 9, 12, and 15 of the '212 patent or method claims 8 and 9 of the '748 patent. *See, e.g.*, 1777 Case, Docket Entry #477; 2023 Case, Docket Entry # 449. There, Adaptix relied on *SiRF Tech., Inc. v. Int'l Trade Com'n*, 601 F.3d 1319 (Fed. Cir. 2010), rather than asserting the defendants themselves directly infringed by performing each step of any claimed method.[2]  Adaptix focused on the defendants' "sale

---

infringement, but the California court denied leave to amend because Adaptix had not been diligent. *See, e.g.*, 2023 Case, Docket Entry #s 248 (motion) & 255 (order).  Adaptix has filed a new case for contributory infringement for alleged actions after the filing of the earlier action.

[2] In *SiRF*, the Federal Circuit concluded it was the accused infringers that performed all the steps required for direct infringement, not the customers who possessed the GPS products. Recently, in *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014), the Federal Circuit clarified *SiRF* "did not create direct infringement liability whenever an alleged infringer sells a product that is capable of executing the infringing method." *Id.* at 1221.  "Unlike the method in *SiRF,* there are no steps automatically performed *by equipment controlled by D–Link*. In fact, none of our decisions have found direct infringement of a method claim by sales of an end user product which performs the entire method, and we decline to do so here." *Id.* at 1222 (emphasis added).

of handsets programmed to perform what the 3GPP standard refers to as 'CQI Reporting Mode 3.'"

*Adaptix, Inc. v. Apple, Inc.*, 2015 WL 273140, at *2 (N.D. Cal. Jan. 20, 2015).

Judge Grewal first held Adaptix had not presented evidence that the accused handsets were used to perform at least one step of a claimed method by an individual acting for the defendants or by an individual "controlled" by the defendants. *Id.* at *3. Judge Grewal rejected Adaptix's argument that Verizon directly infringed the method claims by controlling the use of their respective customers' LTE devices. *Id.* at *3, n.18 ("Adaptix argues that Verizon 'controls' the performance by the accused handsets by sending a Mode 3 request to the handsets, which have been programmed to automatically generate a Mode 3 report upon receipt. . . . Not only does Adaptix fail to cite to any case law finding control based on such limited facts, but similar theories have been rejected by other courts.").

Regarding Adaptix's *"SiRF-based theory,"* Judge Grewal held that "[u]nder *Ericsson*, even if [Defendants] supply handsets preprogrammed to perform multiple claimed steps, Defendants must still perform at least one step of a claimed method themselves to be held liable for direct infringement. Because there is no genuine dispute that Defendants perform no such step, Defendants' motions must be GRANTED." *Id*. at *1. Judge Grewal entered final judgment on February 2, 2015, as follows:

> The Court enters final judgment in favor of defendants Apple Inc. and AT&T Mobility LLC and against plaintiff Adaptix, Inc. ("Adaptix") on all of Adaptix's claims for infringement of U.S. Patent No. 7,454,212 ("'212 patent") and U.S. Patent No. 6,947,748 ("'748 patent"). Plaintiff shall take nothing by way of its complaints.
>
> In addition, claims 9 and 10 of the '212 patent and claims 8 and 9 of the '748 patent are adjudged invalid. Defendants' counterclaims with respect to all other patent claims of the '212 patent and '748 patent are hereby dismissed without prejudice.

1777 Case, Docket Entry # 489; *see also* 1776 Case, Docket Entry # 419; 1778 Case, Docket Entry # 416; 1844 Case, Docket Entry # 384; 2023 Case, Docket Entry # 461.

According to Defendants, the only remaining asserted patent claims in the present cases are method claims 1, 8, 12, and 15 of the '212 patent,[3] and those method claims are a subset of the patent claims on which the California court granted summary judgment of non-infringement. Given Judge Grewal's summary judgment order and final judgment, Defendants move for summary judgment on preclusion grounds here, asserting Adaptix has no remaining viable claims.

## III.

## STANDARDS

The Court uses familiar standards to resolve Defendants' motion for summary judgment. Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the court establish there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Defendants, as the movants, bear the initial burden to demonstrate the absence of any material fact. *Celotex v. Catrett,* 477 U.S. 317, 332 (1986). "Because collateral estoppel and *res judicata* present affirmative defenses, [Defendants bear] an affirmative evidentiary burden to show the absence of a

---

[3] Adaptix only asserted its Mode 3 infringement theory for method claims of the '748 and '212 patents, not any apparatus claims. Adaptix dropped independent method claim 6 of the '748 patent. The remaining asserted independent method claim of the '748 patent (Claim 8) was invalidated on December 3, 2014. (Cause No. 6:12cv17, Docket Entry # 297). The Court's March 11, 2015 order striking Adaptix's Mode 3 "selecting some" infringement theory (Cause No. 6:12cv17, Docket Entry # 336) mooted the asserted apparatus claims because that was the only remaining infringement theory for those apparatus claims; Adaptix earlier dropped its Mode 2 infringement theory. The Court notes Adaptix has filed objections to the March 11, 2015 order. While this Report and Recommendation only addresses the remaining method claims of the '212 patent, its findings could be applicable to any apparatus claims initially asserted by Adaptix.

6

genuine issue of material fact on the elements of either collateral estoppel or *res judicata*." *Charles E. Hill & Assoc., Inc. v. Amazon.com*, 2005 WL 2488715, *2 (E.D. Tex. Oct. 7, 2005)(emphasis in original). If Defendants meet that burden, Adaptix must point to admissible evidence demonstrating there is a genuine issue for trial. FED. R. CIV. P. 56(e). In assessing the proof, the court views the evidence in the light most favorable to the nonmovant. *Matshusita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).

## IV.

## DEFENDANTS' MOTION, GENERALLY

Defendants' motion addresses four issues: (1) collateral estoppel ("issue preclusion"); (2) res judicata ("claim preclusion");[4] (3) the *Kessler* doctrine; and (4) Adaptix's contributory infringement claims.

**First**, Carrier Defendants (AT&T and Verizon) and the LG Defendants both assert issue preclusion bars Adaptix from arguing that any defendant in these cases—carrier or manufacturer—directly infringes the method claims of the '212 patent in the following ways: (1) that any Defendant directly infringes the method claims by selling LTE devices (Adaptix's *SiRF* theory) and (2) that AT&T and Verizon directly infringe the method claims by controlling the use of their

---

[4] Courts often use the term "claim preclusion" in place of the more general term "res judicata." *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 n. 2 (Fed. Cir. 2008). "Although the term res judicata was once used primarily to denote the concept of claim preclusion, usage of the term res judicata has evolved to include 'any preclusion of litigation arising from a judgment, including collateral estoppel.'" *Id.* (quoting *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 478 (Fed.Cir.1991)). Thus, to maintain the analytical distinction between res judicata and collateral estoppel, courts often substitute the terms "claim preclusion" and "issue preclusion." *Id.*

respective customers' LTE devices. According to Defendants, Adaptix litigated these same issues against the carriers and manufacturers in the California cases and lost on the merits.

**Second**, Carrier Defendants contend claim preclusion and the separate *Kessler* Doctrine each independently bar all of Adaptix's claims against them in these cases. According to Carrier Defendants, Adaptix argued in the Northern District of California that the 4G LTE devices (manufactured by Apple/HTC) sold by AT&T and Verizon infringe its patents.  Having lost in California, Carrier Defendants contend Adaptix should not be able to continue to argue in the Eastern District of Texas that the 4G LTE devices (manufactured by LG/Pantech) sold by AT&T and Verizon infringe the same patents for the same reasons.

Carrier Defendants argue it is irrelevant that the 4G LTE devices in the California cases were Apple and HTC devices, instead of LG and Pantech devices like in these cases.  This is so, according to Carrier Defendants, because Adaptix is pursuing the same infringement theory in these cases that it pursued in the California cases: the accused devices operating on the accused carrier networks allegedly infringe through their use of Mode 3 CQI reporting as defined in the 3GPP LTE industry standard. Carrier Defendants rely on Adaptix's infringement claims, which the defendants assert are based entirely on functionality defined in the 3GPP LTE industry standard.

Adaptix and its expert rely on accused Mode 3 CQI reporting functionality (which is defined in the 3GPP LTE industry standard) in both sets of cases as well as Adaptix's identical infringement contentions based on the LTE industry standard.  Because of this, Carrier Defendants assert "Adaptix should not be permitted to bring the same case over and over again every time a new 4G LTE device is released, when Adaptix itself has repeatedly emphasized that the accused functionality is the same in every 4G LTE device."  (Cause no. 6:12cv17, Docket Entry #340 at pg. 3).  According to Carrier

Defendants, it would be unjust for AT&T and Verizon to have to defend "over and over again on the same patents for the same 4G LTE standard technology," and it would also be burdensome for federal courts, "which will face duplicative claims in suit upon suit." *Id.*

    **Finally**, Defendants assert the absence of a direct infringer bars Adaptix's claims of contributory infringement against the Manufacturer Defendants (LG and Pantech) in the present cases.

    With Defendants' general arguments in mind, the Court first considers whether issue preclusion bars Adaptix from arguing that any defendant in these cases—carrier or manufacturer—directly infringes the method claims of the '212 patent under these two theories: that any Defendant directly infringes the method claims by selling LTE devices and that AT&T and Verizon directly infringe the method claims by controlling the use of their respective customers' LTE devices.

## V.

## ISSUE PRECLUSION

**A.    Applicable law**

    "Issue preclusion bars subsequent litigation on an issue of law or fact that was actually litigated." *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1054-55 (Fed. Cir. 2014).  If an issue of fact or law is actually litigated and determined by a final judgment, and the determination is essential to the judgment, the determination is "conclusive in any later action between the parties on the same or a different claim."  *Id.* at 1055.  In a patent case, issue preclusion prevents a plaintiff who previously litigated (and lost) a claim that certain technology infringed its patent from taking "another bite at the apple" by asserting later the same technology infringes the same patent. *See*

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1312 (Fed. Cir. 2010). Unlike claim preclusion, which applies as between the original parties and closely-related persons, issue preclusion may be applied in subsequent litigation involving parties who are not bound by the earlier judgment.

Issue preclusion is analyzed using the law of the regional circuit. *Id*. at 1311.  To apply issue preclusion to an issue in the Fifth Circuit, an issue of law or fact must 1) be identical in the two actions, 2) have been actually litigated in the prior action, and 3) have been necessary to the judgment in the prior action." *Id.* (citing *Next Level Commc'ns LP v. DSC Commc'ns Corp.,* 179 F.3d 244, 250 (5th Cir.1999)). Here, the parties only dispute the first element, that the two issues at stake are identical in the two actions.

**B.     Whether the two issues at stake are identical in both sets of actions**

Defendants assert Adaptix argued in the California cases two theories of direct infringement of the method claims of the '212 and '748 patents: (1) direct infringement by all defendants (Apple, HTC, AT&T, and Verizon) based on *selling* LTE devices (Adaptix's *SiRF* theory); and (2) direct infringement by AT&T and Verizon based on *controlling the use* of their respective customers' LTE devices. According to Defendants, Judge Grewal specifically rejected both of these infringement theories in his order granting summary judgment of no direct infringement. *See, e.g.*, 2023 Case, Docket Entry # 449 at pgs. 6-8. Thus, Defendants assert the issues sought to be precluded from relitigation here are identical to the issues decided in the earlier proceeding, satisfying the disputed element of issue preclusion.

Rather than focusing its responsive arguments on the two specific issues raised by Defendants, Adaptix relies on the recent Federal Circuit case *Brain Life*, *LLC v. Elekta Inc., supra*,

10

asserting it holds "there can be no issue preclusion for infringement by use of *another* manufacturer's accused products never at issue in the first action," regardless of similarity of the products.  (Cause No. 6:12cv17, Docket Entry # 348 at pg. 8)(emphasis in original). In *Brain Life*, the plaintiff in a prior litigation ("MIDCO") had sued the defendant Elekta, alleging Elekta's GammaKnife, GammaPlan, and SurgiPlan products infringed both the patent-in-suit's apparatus and method claims. *Id.* at 1049.  As the case progressed, MIDCO neglected the method claims, focusing instead on its apparatus claims. *Id.* at 1050.  "Only terms from the apparatus claims were construed by the district court, and just before trial, Elekta requested that the court dismiss the method claims from the case." *SpeedTrack, Inc. v. Office Depot, Inc.*, 2014 WL 1813292, *8 (N.D. Cal. May 6, 2014)(citing *Brain Life*, 746 F.3d at 1050).  MIDCO did not oppose Elekta's motion, and the district court dismissed the method claims without prejudice. *Id.* Although the jury found Elekta infringed the apparatus claims, "on appeal, the infringement finding was reversed, and the case was remanded so that the district court could enter a judgment of non-infringement as a matter of law." *Id.*

MIDCO attempted to revive the method claims on remand, but the "district court refused to reopen the case and entered final judgment in favor of Elekta." *Brain Life*, 746 F.3d at 1050. MIDCO appealed, and the Federal Circuit affirmed the district court's decision not to reopen the case.  "As such, the judgment that Elekta did not infringe the apparatus claims of the [patent-in-suit] was final." *Id.*

Later, a licensee of the patent-in-suit ("Brain Life") sued Elekta for infringement based on Elekta's GammaKnife, GammaPlan, SurgiPlan, and a new product, ERGO++, seeking to assert the method claims that were dismissed prior to trial in the first MIDCO case. *Id.* at 1050-51.  After Elekta moved to dismiss on res judicata or claim preclusion grounds, the trial court held the primary

dispute was whether the newly accused Elekta products were "essentially the same" as the accused

products in the first suit.  *Id*. at 1051.  The district court denied the motion to dismiss and ordered

some discovery on the question of whether the products in both suits were essentially the same.  *Id.*

The district court also severed Elekta from the remaining defendants to allow Brain Life's claims

against them to proceed on the merits while the court resolved the claim preclusion issue.  *Id.*

"After some discovery, Brain Life moved to dismiss Elekta's res judicata and collateral

estoppel defenses, and Elekta moved for summary judgment on its res judicata defense."  *Id*.  The

district court granted summary judgment based on claim preclusion, finding that, once final

judgment was entered in the first case in favor of Elekta, "Elekta proceeded to develop and sell its

products with an understanding that its products did not infringe the [patent-in-suit]."  *Id.* Because

MIDCO could have pursued the method claims in the first litigation, but chose not to, the district

court in the second case held Brain Life's attempt to revive those claims was barred.  "The trial court

did not differentiate the ERGO++ product from the other Elekta products at issue.  Brain Life then

appealed that determination."  *Id*. at 1051-52.[5]

On appeal, Brain Life argued, among other things, the ERGO++ product was new to Elekta;

thus it could not have been accused in the first MIDCO litigation, and neither issue preclusion nor

claim preclusion could apply to that product.  *Id.* at 1052-53.  The Federal Circuit reversed the

district court's decision to the extent that it was based on claim preclusion, but it found that Brain

Life's claims were barred based on the separate and distinct *Kessler* doctrine. *Id.* at 1052.  The Court

---

[5] Meanwhile, the action against the other defendants proceeded to claim construction of
the method claims of the patent-in-suit.  The district court concluded the method claims were
broader than the apparatus claims construed in the first MIDCO litigation.  *Brain Life*, 746 F.3d
at 1052.

discusses those aspects of *Brain Life* in more detail below.  For now, the Court focuses on the Federal Circuit's short discussion on issue preclusion.

In addressing issue preclusion, the Federal Circuit noted that MIDCO had unsuccessfully asserted the apparatus claims against Elekta in the first litigation, but Brain Life had not asserted the apparatus claims against Elekta in the second litigation.  *Id*. at 1055.  Importantly, the Federal Circuit noted "[t]o the extent it had, the trial court's findings that Elekta's own products– the GammaKnife, GammaPlan, and SurgiPlan products – were not materially different from the products at issue in the MIDCO Litigation would bar it from asserting those claims."  *Id*.  According to the Federal Circuit, the method claims, however, were a separate matter, particularly to the extent they related to the new ERGO++ product, a product which Elekta had purchased from a third party after the MIDCO judgment and appeal.  *Id*. at 1051, 1055.

According to the Federal Circuit, while MIDCO asserted the method claims against Elekta in the first litigation, it was "evident that those claims were not fully, fairly, and actually litigated to finality.  Accordingly, . . . issue preclusion [did] not stand as a bar to a second suit on those claims." *Id*. at 1055. The Federal Circuit further noted the ERGO++ product was never at issue in the MIDCO litigation.  The court stated that while "similarities between it and the products actually litigated may mean that certain questions regarding infringement of the claims effectively may be foregone conclusions, they are not barred by our case law applying issue preclusion to previously challenged products which have not been materially altered."  *Id*.  The court concluded issue preclusion under these facts was no "bar to assertion of the method claims based on use or sales of the ERGO++ product." *Id*.

13

The Court disagrees with Adaptix's interpretation of *Brain Life* as it applies to issue preclusion under the facts of this case. The Federal Circuit's conclusion in *Brain Life* on issue preclusion does not mean, as urged by Adaptix, that because only Carrier Defendants' use of Apple and HTC products was litigated in the California cases (and not use of LG and Pantech products) Adaptix may argue direct infringement of the method claims in these cases "under any theory." Cause No. 6:12cv17, Docket Entry #348 at pg. 8.  In *Brain Life*, the method claims against Elekta were never "fully, fairly and actually litigated to finality." In addition, Elekta's ERGO++ product was never at issue in the first MIDCO litigation, because Elekta purchased this new product from a third party after the MIDCO judgment and appeal; thus it could not have been accused in the first MIDCO litigation.

Here, Adaptix filed the California cases and the current cases around the same time in early 2012.  The accused devices at issue in all of the cases were in existence at the time the cases were filed.  In the California cases, which proceeded to final judgment first, Adaptix advanced the same theories of direct infringement of the method claims of the '212 and '748 patents as it advances in these cases: direct infringement by all defendants based on selling LTE devices (*SiRF* theory) and direct infringement by AT&T and Verizon based on controlling the use of their respective customers' LTE devices.  Adaptix does not dispute that it fully and fairly litigated these two issues in California.

Nor does Adaptix dispute these two issues have been decided.  Adaptix acknowledges Judge Grewal, in his order on the defendants' second motion for summary judgment (the one relied upon by Defendants here), ruled against Adaptix on its *SiRF* theory, namely the theory that providing to an end user a handset programmed to automatically perform the claimed steps made the provider

responsible as a direct infringer for the performance of those steps.  Cause No. 6:12cv17, Docket Entry # 348 at pg. 3.  Adaptix further acknowledges Judge Grewal ruled that because the Apple and HTC handsets were in the possession of end users, and not in the possession of the carriers, those end users, not the carriers, "controlled" the performance of the steps of the claims method.  *Id*. at pg. 2.  According to Adaptix, Judge Grewal granted summary judgment of no direct infringement by the carriers AT&T and Verizon based on his finding that the end users (rather than the carriers) could be the only direct infringers (and because the Court found Adaptix had presented no evidence of use by Apple or HTC employees as end users).  *Id*. at pgs. 2-3.

Adaptix's only argument is that Apple and HTC devices were at issue in California but LG and Pantech devices are at issue here.  Adaptix does not identify any difference in how the LG and Pantech devices operate compared to the Apple and HTC devices.  Nor has Adaptix demonstrated how a different manufacturer's handset would alter the infringement analysis.  As urged by Defendants, the overriding issue in these cases is whether AT&T and Verizon control the use of their respective customers' LTE devices, the same legal issue Judge Grewal considered and rejected in the California cases.

The Court finds instructive *Charles E. Hill & Assoc., Inc. v. Amazon.com*, 2005 WL 2488715, *5 (E.D. Tex. Oct. 7, 2005). There the court found AOL was entitled to judgment as a matter of law because Hill's claims under the patent were barred by issue preclusion.  According to the court, the burden was on AOL, "as the movant, to demonstrate that the technology accused of infringement in this case" was the same as that accused of infringement in the first case.  *Id.* at *3. The court held a comparison of Hill's infringement contentions in the first case and those in the second case was dispositive on the issue of whether the technology was the same.  *Id.*

15

In the first case filed in Indiana, Hill argued that certain websites of an AOL subsidiary infringed its '490 patent. Hill pointed to conventional Internet technology and protocols to allege the limitations of the '490 patent claims were met. *Id.* at *1, 3. Because Hill failed to prove the accused technology met certain "constant/variable data" limitations in the asserted '490 patent claims, the Indiana court granted summary judgment of non-infringement. *Id.* at *1. The Federal Circuit affirmed the Indiana court's decision. *Id.*

Later, Hill filed a second case in the Eastern District of Texas against AOL, accusing different websites of infringing several related patents, including the '490 patent. *Id.* at *1, 3-4. AOL filed a summary judgment motion that plaintiff was barred by the doctrines of claim preclusion and issue preclusion from asserting its infringement claims. *Id.* at *2. To establish the newly accused products and previously adjudged non-infringing products were "essentially the same," AOL relied on a comparison of Hill's infringement contentions in both cases. *Id.* at *3-4. The comparison showed Hill was accusing the same underlying technology that had been adjudged to be non-infringing. *Id.*

Specifically, in both cases, "Hill presented its infringement case at a high level, contending that the accused technology is alleged to infringe *because* constant data has a modification date and/or a revision level for a file containing constant data." *Id.* at *3 (emphasis in original). Although AOL had not proven the source code underlying the websites involved in the case before the court was exactly the same as the source code involved in the Indiana case, the court held AOL had discharged its summary judgment burden by demonstrating, under plaintiff's own infringement contentions, that the products accused of infringement in the second case were accused of infringement for the same reasons that existed in the first case. *Id.*

16

Here, as in *Hill*, Carrier Defendants rely on Adaptix's infringement contentions in both sets of cases, asserting Adaptix is pursuing the same infringement theory in these cases that it pursued in the California cases: the accused devices operating on the accused carrier networks allegedly infringe through their use of Mode 3 CQI reporting as defined in the 3GPP LTE industry standard. Carrier Defendants further rely on the following assertions by Adaptix:

> • In the instant suit, ***all implementations of the LTE standard infringe the claims of Patents-in-Suit***, and so it would be a waste of judicial resources to separately analyze every accused product that undisputedly practices the LTE standard. (Cause No. 6:12cv120, Docket Entry # 124 at 4 (emphasis added));

> • Although the accused devices here use different operating systems, ***the devices have no material differences among them for purposes of Adaptix's infringement analyses***. All accused devices are advertised as employing 'LTE' (i.e., 'Long Term Evolution'), which is defined by a set of standards that specify the capabilities and functionalities that LTE services must be capable of achieving. (Cause No. 6:12cv120, Docket Entry # 80 at 2 n.3 (emphasis added));

> • Adaptix asserts that the reach of its claims includes any device that practices the LTE Release 8 Standard. (Cause No. 6:12cv120, Docket Entry #108 at 4).

> • With all of these devices the accused technology is [ ] substantially identical from device to device. . . . our theory is basically they are the same throughout. (5:13-cv-1776, 2013-10-09 Hearing Tr. at 7 (Adaptix's counsel, Mr. Ercolini)).

According to Carrier Defendants, Adaptix's infringement expert, Dr. Caloyannides, confirmed that his theories of infringement are the same regardless of manufacturer:

> **Q:** In other words, your theories of infringement are the same whether you're considering ***an Apple, HTC or an LG device*** in AT&T's network?

> **A:** Yes.

(9/12/14 Caloyannides Tr. at 246:13-21) (emphasis added) ( 9/12/14 Caloyannides Tr. at 248:15-249:1 and Ex. 7 (9/13/2014 Caloyannides Tr.) at 7:23-8:3).

Carrier Defendants have discharged their summary judgment burden to demonstrate, under Adaptix's own infringement contentions and assertions, that the accused technology in the two sets of cases is accused of infringement for the same reasons that existed in the California cases (direct infringement by all defendants based on selling LTE devices and direct infringement by AT&T and Verizon based on controlling the use of their respective customers' LTE devices). These issues were "actually litigated in the former proceeding," as Judge Grewal decided them in his order on summary judgment in the California cases. *See, e.g.*, 2023 Case, Docket Entry # 449. There is no genuine dispute the determination of these issues in the California cases was "necessary to the judgment," or that Adaptix, as the party opposing summary judgment of non-infringement on these issues in the California cases, "fully, fairly, and actually litigated to finality" these issues before Judge Grewal. *See Brain Life*, 746 F.3d at 1055.

For the foregoing reasons, the Court finds issue preclusion bars Adaptix from arguing in the present cases the following: (1) any defendant directly infringes the method claims by selling LTE devices (Adaptix's *SiRF* theory); and (2) AT&T and Verizon directly infringe the method claims by controlling the use of their respective customers' LTE devices. The Court now considers Carrier Defendants' assertions that claim preclusion bars all of Adaptix's claims against them.

## VI.

## CLAIM PRECLUSION

### A.    Applicable law

In patent cases, the Federal Circuit applies regional circuit law in determining general principles of claim preclusion. *See, e.g.*, *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1304 (Fed. Cir. 2007) (applying regional law to determine whether a patentee was bound by its

previous admissions in determining whether claim preclusion applied). However, in addressing issues of claim preclusion that are "particular to patent law" (i.e., whether a particular case is the same as or different from another cause of action), Federal Circuit law and not regional circuit law governs. *Nystrom v. Trex Co.*, 580 F.3d 1281, 1285 (Fed. Cir. 2009).

For general principles of claim preclusion under Fifth Circuit law, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). The Fifth Circuit's test for claim preclusion has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Oreck*, 560 F.3d at 401.

Here, Adaptix does not dispute the first three elements are satisfied.[6] Thus, whether the same cause of action was involved in both sets of cases is the key issue.[7] Regarding this fourth element,

---

[6] Adaptix does not dispute the California cases resulted in a final judgment on the merits rendered by a court of competent jurisdiction or that the parties are identical or in privity. AT&T and Verizon and Adaptix were all parties in the California cases. The fact the California cases included other defendants (Apple and HTC) does not preclude application of claim preclusion. *See, e.g. Dreyfus v. First Nat'l Bank of Chicago*, 424 F.2d 1171, 1175 (7th Cir.), *cert. denied,* 400 U.S. 832 (1970) ("it is no objection that the former action included parties not joined in the present action, or vice versa, so long as the judgment was rendered on the merits, the cause of action was the same and the party against whom the doctrine is asserted was a party to the former litigation").

[7] According to the Federal Circuit in *Acumed*, because the term "claim" has a special meaning in patent law, the court used the term "claim" in its discussion of claim preclusion "to denote a cause of action, not a patent claim." 525 F.3d at 1323, n.2. For purposes of this Report and Recommendation, in order to avoid any confusion, the Court uses the term "cause of action" rather than the term "claim."

Adaptix does not challenge Carrier Defendants' characterization of its infringement contentions or the uniformity of operation under the LTE industry standard.  In its reply, Adaptix does not dispute the different handsets (Apple/HTC and LG/Pantech) operate similarly.

In arguing claim preclusion does not apply here, Adaptix first asserts Carrier Defendants misunderstand the doctrine of claim preclusion which it contends is really just a prohibition on claim splitting.  According to Adaptix, Defendants have acquiesced to Adaptix's filing of separate suits.  To the extent the Court disagrees with its assertions regarding claim splitting and Defendants' acquiescence to separate suits, Adaptix argues (as it did with issue preclusion) that its present "claims" are not identical to those adjudicated in California, causes of action which were based on Apple and HTC products.  Before considering the key issue, the Court will address Adaptix's assertions regarding claim splitting and whether Carrier Defendants' acquiesced to Adaptix's separate suits.

**B.      Prohibition on claim splitting/acquiescence exception to the claim splitting prohibition**

**1.      Adaptix's assertions**

Adaptix argues the claim preclusion issue raised by Carrier Defendants is more properly considered as one of claim splitting, even though Carrier Defendants have not argued Adaptix improperly split its claims by filing numerous lawsuits against them, coupled with different manufacturers. According to Adaptix, the Court need only answer one question with respect to claim preclusion: did Adaptix improperly split its cause of action against a carrier by filing separate suits, broken down by handset manufacturer?

According to Adaptix, there can be no claim preclusion unless Adaptix was required to have made its claims for the use of LG and Pantech handsets as part of the Apple and HTC actions.

Adaptix asserts the law does not require that it include in its other suits (against Apple/HTC handset devices) any claims against LG and Pantech handset devices.  On the contrary, Adaptix argues the Leahy–Smith America Invents Act ("AIA") of 2011, specifically 35 U.S.C. § 299, prohibited Adaptix from joining all of the handset manufacturers in a single suit because Adaptix's rights to relief from AT&T and Verizon's alleged use of LG and Pantech handsets do not arise from the same transactions or occurrences as Adaptix's rights from the use of HTC or Apple handsets.  Adaptix further asserts it could not proceed only against a carrier because its claims against the handset manufacturer arose out of the "same nucleus of operative facts."[8]

2.    **Discussion**

It is well established that a party may not split a cause of action into separate grounds of recovery and raise the separate grounds in successive lawsuits; instead, a party must raise in a single lawsuit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982) (all actions arising from the same transaction or series of transactions are regarded as constituting a single cause of action).  However, there are exceptions to this prohibition on claim splitting, including circumstances

---

[8] Relying on the requirements of the AIA, Adaptix asserts it could not have brought the claims against other handset devices in the California cases, no matter how similar the products. Cause No. 6:12cv17, Docket Entry # 352 at pg. 5.  This arguments misses the point.  The specific handset devices involved in each case is not the issue. Rather, the issue for purposes of claim preclusion is whether Adaptix brought (or could have brought) the same cause of action in both sets of cases.  Carrier Defendants assert the specific manufacturers' handset devices, which Adaptix concedes operate similarly, do not affect the infringement analysis.  While the AIA's joinder provisions might explain why Adaptix choose not to join claims against other manufacturers' handsets in the same suit in the first place, the fact remains Adaptix sued in numerous cases the same Carrier Defendants (coupled with the different handset manufacturers) for infringement of the same patents based on what Carrier Defendants assert is the same or essentially the same cause of action.

where the parties have agreed the plaintiff may split his claim or the defendant has acquiesced to the splitting of the claim (i.e., cause of action). RESTATEMENT (SECOND) OF JUDGMENTS § 26(a).

Claim splitting is just a sub-species of the doctrine of claim preclusion and is designed to "protect the defendant from being harassed by repetitive actions based on the same claim." *Adobe Systems Incorporated v. Wowza Media Systems, LLC, et al.*, Case No. 14-cv-02778-JST (N.D. Cal. Oc. 27, 2014). In the context of claim splitting, the analysis requires only the *assumption* that the first suit was finally decided. *See Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F.Supp.2d 1052, 1059 (S.D.Cal.2007)(noting that in the context of claim splitting no final judgment on the merits is required. Instead, the appropriate inquiry is whether, assuming that the first suit were already final, the second suit could be precluded pursuant to claim preclusion").[9] Here, there is a final judgment on the merits so the Court does not need to assume the California cases were finally decided before considering the remaining elements applicable to claim preclusion. Thus, the issue remains whether Adaptix brought the same cause of action in both sets of cases.

---

[9] In *Single Chip*, the Southern District of California had pending before it a 2004 counterclaim and a 2007 complaint alleging infringement of the same patent. The 2004 counterclaim sought damages for only pre–2005 acts of infringement under 35 U.S.C. § 271(a)-(c), while the 2007 suit sought damages for post–2005 acts of infringement under 35 U.S.C. § 271(a)- (c) as well as § 271(f). The same products were named in both suits. Because there was no final judgment in the 2004 action, the court engaged in a claim splitting analysis under Ninth Circuit law (which follows the RESTATEMENT (SECOND) OF JUDGMENTS approach to claim preclusion), requiring the application of claim preclusion principles. 495 F.Supp.2d at 1058. According to the court, both claims alleged "identical facts." The 2007 complaint disclosed "no additional factual allegations that would support an additional cause of action under § 271(f)." *Id.* at 1062–63. The court held both suits "[arose] out of the same transactional nucleus of operative facts." *Id.* at 1063. Ultimately, because "substantially the same evidence" would be presented in both actions, the *Single Chip* court dismissed the 2007 complaint. *Id.* at 1065.

Although Adaptix acknowledges the similarities between all of the cases, it contends the claims here do not form part of the same cause of action.  It contends even if the two sets of cases involve the same cause of action, claim preclusion would not bar these cases because Carrier Defendants did not object to Adaptix's maintaining separate actions based on the same cause of action.  This question is a general issue of the law of judgments that should be decided under the law of the regional circuit. *Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 618 (Fed. Cir.1995).  Adaptix relies on *Matter of Super Van Inc.*, 92 F.3d 366 (5th Cir. 1996), among other cases from outside the Fifth Circuit.

In *Super Van*, there were two concurrently pending lawsuits involving the same claim, and both parties had affirmatively argued against consolidating the two cases.  In fact, counsel for the defendants had explicitly stated his client preferred to litigate the two lawsuits separately. *Id*. at 369. The Fifth Circuit reversed the district court's application of res judicata and adopted § 26(1)(a) of the RESTATEMENT (SECOND) OF JUDGMENTS , which allows two lawsuits on the same cause of action if "the parties have agreed in terms or in effect that the plaintiff may split [its] claim, or the defendant has acquiesced therein."  *Id.* at 371 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 26(a)(1982)).   According to the RESTATEMENT (SECOND) OF JUDGMENTS,

> [w]here the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim.

*Id*.

23

Carrier Defendants state they have objected to the serial suits Adaptix filed against them and have argued this fact in support of their motion for attorneys' fees in the California cases. Carrier Defendants further assert Adaptix has not cited any case law applying an acquiescence exception to claim preclusion on facts analogous to these cases, nor has it provided any evidence of Carrier Defendants' acquiescence.

The Court is not persuaded Carrier Defendants acquiesced in Adaptix's simultaneous maintenance of nine separate actions again them. Shortly after the defendants filed motions to transfer venue to the Northern District of California asserting all nine cases are related, the Court consolidated the cases for all pretrial purposes except venue, noting they involved a common question of law or fact. *See, e.g.* Cause No. 6:12cv16, Docket Entry # 62. Later, the Court severed and transferred certain cases to California. After transferring several of the related cases, the Court vacated the consolidation order in view of the changed procedural posture of the cases. *Id.* (Docket Entry # 126).

More importantly, in *Super Van*, the Fifth Circuit held claims that were not actually litigated in the first suit are not barred unless they could and should have been brought in that suit; for that reason, if the party asserting claim preclusion acquiesced in nonassertion in the first suit of the claims made in the second suit, claim preclusion would not operate in favor of the acquiescing party. 92 F.3d at 370-71.[10] In these cases, the question is not whether Adaptix could or should have

___

[10] The Fifth Circuit noted the defendants had suggested at oral argument that the issues raised in the second suit actually were litigated in the first suit- as opposed to "could and should" have been litigated. 92 F.3d at 371 n. 12. The Fifth Circuit stated the defendants did not raise this issue in their briefs, and it was not the basis of the district court's ruling. Additionally, the Fifth Circuit noted the record on appeal revealed not all of the issues raised in the second suit were actually litigated in the first suit; only some of the issues had been litigated. Even so, the Fifth Circuit did not preclude the district court from considering this issue more closely on

litigated the issues in the California cases.  The issue is whether the same cause of action raised by

Adaptix here was actually litigated in California. The Court now turns to this key issue.

**C.     Whether the same cause of action was involved in both set of cases**

"Claim preclusion will generally apply when a patentee seeks to assert the same patent

against the same party and the same subject matter."  *Senju Pharm. Co. v. Apotex Inc*., 746 F.3d

1344, 1349 (Fed. Cir. 2014) (citing *Transclean*, 474 F.3d at 1305).  According to Carrier Defendants,

there is a final judgment in the California cases that AT&T and Verizon do not infringe the asserted

patents, and this suit presents the same infringement cause of action brought for the same

reason—AT&T's and Verizon's sale of 4G LTE devices (*e.g*., smartphones). Although the 4G LTE

devices in the California cases were Apple and HTC devices (and here they are LG and Pantech

devices), Carrier Defendants assert the accused functionality, which is defined in the 3GPP LTE

industry standard, is exactly the same in all cases, regardless of which company manufactured the

device.  Pointing out Adaptix does not dispute the handsets operate similarly, Carrier Defendants

contend the allegedly infringing devices here are "essentially the same" as those in the California

cases; thus, the causes of action in the two sets of cases are the same.

Adaptix disagrees.  Adaptix asserts its causes of action against LG and Pantech do not arise

from the same "nucleus of operative facts" as Adaptix's causes of action in the California actions.

*See Superior Industries, LLC v. Thor Global Enterprises Ltd.*, 700 F.3d 1287, 1292 (Fed. Cir. 2012)

(citing *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990)).[11] According to Adaptix, the causes of

remand.  *Id.*

[11] Two cases involve the same cause of action when they arise from the same "nucleus of operative facts"—i.e., when the same "transaction or series of transactions" forms the basis for the two suits.  *Superior Industries*, 700 F.3d at 1292 (quoting *Lane*, 899 F.2d at 742).  In

action here are based on LG's and Pantech's products, and AT&T and Verizon's alleged acts of direct and contributory infringement in these cases do not involve the same transactions or series of transactions at issue in the Apple and HTC actions in California.

"Claim preclusion only applies to repetitious suits involving the same cause of action." *Superior Industries,* 700 F.3d at 1293 (citing *Comm'r of Internal Revenue v. Sunnen,* 333 U.S. 591, 597–98 (1948) (explaining that in a subsequent suit on the same cause of action, parties are bound by matters that could have been raised in the prior litigation, but in a subsequent suit on a different cause of action, parties are free to litigate points which might have been tendered in the first suit). In patent cases, whether two causes of action for patent infringement are identical is a claim preclusion issue that is "particular to patent law," and therefore the Court analyzes it under Federal Circuit law.  *Acumed,* 525 F.3d at 1323.

In determining whether a cause of action is the same, the Federal Circuit follows "the approach in the RESTATEMENT (SECOND) OF JUDGMENTS, which states that a cause of action is defined by the transactional facts from which it arises, and the extent of the factual overlap." *Senju*, 746 F.3d at 1349.  In addition, the Federal Circuit has explained, "[o]ne of the areas of factual overlap that we consider in a patent case involving claim preclusion is the overlap of the product or process accused in the instant action with the product or process accused in the prior action. If the products or processes are essentially the same, then claim preclusion may apply." *Id.*  The Federal Circuit also considers whether the same patents are involved in both suits.

_____

*Superior Industries*, the Federal Circuit held a 2009 trademark action did not preclude Superior's later-filed patent infringement claim because the two claims arose from clearly separate transactions.  "In other words, these separate cases under separate laws do not constitute the same cause of action."  700 F.3d at 1293.

Here, both sets of cases include the same patent. Regarding the factual overlap of Adaptix's California cases and these cases, Adaptix's infringement contentions are the same in both sets of case. Adaptix does not dispute it sought relief in the California cases under the same theory of direct infringement Adaptix is pursuing in these cases: the accused devices operating on the accused carrier networks allegedly infringe through their use of Mode 3 CQI reporting as defined in the 3GPP LTE industry standard.

Although the accused devices do not completely overlap, whether the products or devices in the two sets of actions are "essentially the same" is only one of the areas the Court considers. Notably, devices are considered essentially the same for purposes of claim preclusion even if there are genuine differences between the devices, so long as those differences are not relevant to the infringement inquiry; "[c]olorable changes in an infringing device or changes unrelated to the limitations in the claim of the patent would not present a new cause of action." *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479–80 (Fed. Cir. 1991).

Carrier Defendants assert the *Nystrom* case is instructive on this point. In 2001, Nystrom sued Trex, alleging Trex's first-generation wood-composite boards ("Trex I boards") literally infringed Nystrom's patent. 580 F.3d at 1283. After receiving an unfavorable claim construction ruling, Nystrom conceded he lacked sufficient evidence to prove infringement. *Id.* at 1284. The Federal Circuit reversed the claim construction in part. On remand, Nystrom attempted to pursue a doctrine of equivalents claim of infringement. *Id.* The district court held Nystrom had waived that argument, and the Federal Circuit affirmed. *Id.*

After the completion of the first case, Nystrom filed a second suit against Trex and added,

27

for the first time, two of Trex's distributors as defendants. *Id.* Nystrom alleged Trex's second-generation products ("Trex II boards") infringed his patent by equivalents. *Id.* Nystrom also argued these second-generation products could not have been included in the first suit because they reached the market after judgment was entered in the first case. *Id.*  Trex moved for summary judgment under the doctrine of claim preclusion, asserting the Trex II boards were essentially the same as the Trex I boards.  The district court denied Trex's motion for summary judgment based on claim preclusion but granted it on other grounds. *Id.*

On appeal, the Federal Circuit held the district court should have granted summary judgment based on claim preclusion. The court explained: "Where an accused infringer has prevailed in an infringement suit, 'the accused devices have the status of noninfringements, and the defendant acquires the status of a noninfringer to that extent.'" *Id.* at 1285 (quoting *Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1316 (Fed. Cir. 1983)). The court noted that while the Trex II boards were materially different in certain respects, the new boards were unchanged as to the claim limitations at issue in the first suit. *Nystrom*, 580 F.3d at 1285. The court noted the only claim limitations at issue in the first suit were "board" and "manufactured to have," and the constructions for the terms were the same in both cases.  *Id.*  The bases of noninfringement were these constructions.  *Id.*

Under such circumstances, Nystrom was "attempting to prove infringement of the same claim limitations as to the same features of the accused devices" and therefore, "this case presents the exact situation that *res judicata* seeks to prevent." *Id.* at 1286. The changes in the boards identified by Nystrom fell within the "colorable changes" category highlighted by the Federal Circuit in *Foster*. *Id.* (quoting *Foster*, 947 F.2d at 480). The court concluded Nystom had made a "tactical decision in

his initial suit to forego any infringement theory based on the doctrine of equivalents. That choice did not pay off." *Nystrom*, 580 F.3d at 1286. Finding the Trex II boards "materially identical to the Trex I boards with respect to the pertinent claim limitations at issue," the court could not under claim preclusion permit Nystom"to have a second bite at the apple." *Id*. The court held the district court erred by denying the defendants' motion for summary judgment to preclude Nystrom's second suit on claim preclusion grounds. *Id.*

Regardless of the carrier/manufacturer combination asserted in the two sets of cases, Carrier Defendants have shown, by relying on Adaptix's infringement contentions and assertions,[12] the accused devices in these cases are materially identical to those in the first case. Adaptix has not identified any differences between the LG/Pantech handsets in these cases and the Apple/HTC handsets in the California cases, much less any differences related to the limitations in the claims of the '212 patent. *See KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1526 (Fed. Cir. 1985)(holding that "contempt proceedings . . . are available only with respect to devices previously admitted or adjudged to infringe, *and to other devices which are no more than colorably different therefrom* and which clearly are infringements of the patent)(emphasis added). As noted above, Adaptix concedes the handsets operate similarly. Even if Adaptix had identified any differences in the handsets, the Court would find those differences would fall within the "colorable changes" category highlighted in *Foster*.

---

[12] *See Icon-IP Pty, Ltd. v. Specialized Bicycle Components, Inc.*, 2013 WL 10448869, *3 (N.D. Cal. Oct. 22, 2013)(unreported)(noting the court is permitted to take notice of statements and contentions for the purposes of resolving the claim preclusion motion "because they have a direct relationship to the issues before the Court.").

Claim preclusion "bars all claims that were or *could have been advanced* in support of the cause of action on the occasion of its former adjudication, not merely those that were adjudicated." *Matter of Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990) (internal quotation omitted)(emphasis added). While Adaptix did not include contributory infringement in its infringement contentions in California, it could have continued to assert contributory infringement, as it was initially pled (Adaptix was later denied leave to amend its contentions to include contributory infringement). *See SpeedTrack*, 2014 WL 1813292, *5 ("[E]ven though SpeedTrack did not assert infringement under the doctrine of equivalents in [the first suit], it certainly could have. In fact, in the [first suit], SpeedTrack . . . filed a motion for leave to amend its infringement contentions, seeking to add the doctrine of equivalents" but the court denied SpeedTrack's motion because SpeedTrack had not been diligent).

For all of these reasons, the Court finds these cases involve the same infringement cause of action that was involved in the California cases, meeting the one disputed element of claim preclusion. Having found all four elements of claim preclusion satisfied, the Court now considers Adaptix's secondary argument, wherein it asserts two recent Federal Circuit cases provide there is a temporal limit on the effect of claim preclusion. *See Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1343 (Fed. Cir. 2012); *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1054 (Fed. Cir. 2014). More specifically, Adaptix asserts claim preclusion does not affect Adaptix's rights arising during the pendency of the California cases and following the February 2, 2015 final judgment in the California cases.

**D.    Whether claim preclusion bars Adaptix's pursuit of rights that arose either after final judgment was entered in the California cases or during pendency of those actions**

**1.    Federal Circuit cases relied upon by Carrier Defendants**

Carrier Defendants rely on *Foster* and *Nystrom*, discussed above, asserting claim preclusion applies where the accused devices are "essentially the same" (as the Court has found in this case), even when the devices in the second suit were not available until after the final judgment in the first suit.  In *Foster*, the Federal Circuit stated devices are "essentially the same" for purposes of claim preclusion even if there are genuine differences between the devices, so long as those differences are not relevant to the infringement inquiry. 947 F.2d at 479-80.  The court stated "[c]olorable changes in an infringing device or changes *unrelated to the limitations in the claim of the patent* would not present a new cause of action." *Id.* at 480 (emphasis added).

Later, in *Nystrom*, the Federal Circuit expounded on the issue, again holding a judgment on a claim of infringement against a product barred a later infringement claims against a different product if the two products were "essentially the same."  580 F.3d at 1285. Importantly, the fact the Trex II boards were manufactured after the final judgment in the first case did not affect the court's analysis: the only relevant inquiry was whether the new, post-judgment products were "essentially the same" as those in the first suit. *Id.* at 1284–86.

**2.    Federal Circuit cases relied upon by Adaptix**

Adaptix relies on two recent panel decisions in *Aspex Eyewear* and *Brain Life*, asserting claim preclusion does not bar an infringement claim against an accused device that did not exist as of the prior judgment, whether essentially the same or not. *Aspex* involved a decade-long series of patent litigation. *Id.* at 1338. Aspex sued Marchon for patent infringement in 2006, and in 2008, the

31

parties entered a settlement agreement and a stipulation to dismiss that case with prejudice. *Id*. at

1339. In 2009, after the Patent and Trademark Office reexamined the relevant patent, Aspex filed

a new patent infringement action against Marchon. *Id*. Marchon asserted that because "the accused

products at issue in this case are 'essentially the same' as the allegedly infringing products that were

at issue in the earlier litigation," the settlement of the earlier litigation precludes the second action.

*Id*. at 1340. Marchon "made clear that [it] regarded that argument as applicable even with respect

to particular goods that were made and sold after the initiation and conclusion of the [2006 action]."

*Id*. at 1342.

> The Federal Circuit rejected the argument, stating as follows:

> [R]es judicata does not bar Aspex's lawsuit with respect to accused products not in
> existence at the time of the [2006 action] for the simple reason that res judicata
> requires that in order for a particular claim to be barred, it is necessary that the claim
> either was asserted, or could have been asserted, in the prior action. *If the claim did
> not exist at the time of the earlier action, it could not have been asserted in that
> action and is not barred by res judicata*. . . .

> Although the parties debate whether the design of those products is essentially the
> same as the design of the products that were the subjects of the [2006 action], that
> does not matter with respect to products that were made or sold after the time of the
> previous lawsuits.

> Under well-settled principles, a party who sues a tortfeasor is ordinarily not barred
> by a prior judgment from seeking relief for discrete tortious action by the same
> tortfeasor that occurs subsequent to the original action. That rule is based on the
> principle that res judicata requires a party to assert all claims that the party could
> have asserted in the earlier lawsuit; it follows that *if the party could not have asserted
> particular claims – because the tortious conduct in question had not occurred at that
> time – those claims could not have been asserted and therefore are not barred by res
> judicata*. . . .

> That principle has been applied to patent cases, and in particular to cases involving
> sequential acts of infringement; in that setting, this court and others have
> characterized the 'claim' that gives rise to preclusion as encompassing only the

32

particular infringing acts or products that are accused in the first action or could have been made subject to that action.

*Id*. at 1342-43 (emphasis added).

More recently, in *Brain Life*, the Federal Circuit held claim preclusion bars only "the assertion of infringement . . . to the extent that the alleged acts of infringement predate the final judgment" in the earlier case and does not also bar claims relating to acts of infringement that post-date the judgment in the earlier case. *See Brain Life*, 746 F.3d at 1053. The district court granted summary judgment in favor of Elekta, finding Brain Life's claims were barred. The district court found there was no material difference between the GammaKnife, GammaPlan, SurgiPlan, and ERGO++ products and the previously adjudicated noninfringing products (GammaKnife, GammaPlan, and SurgiPlan only) regarding the limitations of the apparatus claims. *Id.* at 1051. Brain Life had conceded the differences between the products were not material to infringement of the apparatus claims of the patent. However, Brain Life argued the similarity of the products did not bar its allegations of infringement of the patent's method claims. Brain Life also argued the ERGO++ product was new to Elekta, and the question of whether it infringed any of the claims of the patent had never been addressed. *Id.*

The Federal Circuit first noted that without a doubt the principles of claim preclusion "bar the assertion of infringement of either the method or system claims to the extent the alleged acts of infringement predate the final judgment in the MIDCO litigation." *Id.* at 1053. However, "to the extent Brain Life's allegations of infringement are directed to products created and, most importantly, acts of alleged infringement occurring after entry of the final judgment in the MIDCO Litigation, those claims are not barred by the doctrine of claim preclusion." *Id.* at 1054. Stated

33

differently, to the extent Brain Life's current infringement allegations were "temporally limited to acts occurring after final judgment was entered in the first suit," Brain Life's second suit was not barred by claim preclusion, regardless of whether the same transactional facts were present in both suits. *Id*.

In support of its proposition that claim preclusion cannot bar its claims against AT&T and Verizon that accrued during pendency of the California cases, Adaptix relies on *Gillig v. Nike, Inc.*, 602 F.3d 1354, (Fed. Cir. 2010). In that case, the Federal Circuit stated claim preclusion does not apply to "new rights acquired during the action which might have been, but which were not, litigated." *Id*. at 1363 (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 370 (2d Cir. 1997)). Similarly, in *Aspex*, Aspex argued claim preclusion did not bar it from pursuing new claims that were not in existence (at least in the same form) at the time the prior actions were filed; thus, the new claims created new causes of action that Aspex could not have pursued in the previous cases. 672 F.3d at 1340-41.

**3.     Discussion**

This is not a situation where Adaptix acquired "new rights" during the pendency of the California cases which might have been, but which were not, actually litigated. Adaptix does not assert certain claims (or certain handset devices) were not in existence at the time it filed the California actions – new claims that could create new causes of action that Adaptix did not, or could not, have pursued in the California cases. All of the related cases were filed around the same time and were proceeding simultaneously, some in California and some here. Adaptix asserted the same infringement contentions in both sets of cases, and Adaptix has fully litigated its claims regarding the '212 patent in the California cases.

Based on *Brain Life,* there is no question that to the extent that Adaptix's infringement causes of action are based on alleged acts occurring on or prior to February 2, 2015 (the date of final judgment in the California cases), the Court finds they are barred by principles of claim preclusion. For any allegations Carrier Defendants have infringed Adaptix's '212 patent after the date of final judgment in the California cases, the question remains whether those "claims" or causes of action cannot be barred by claim preclusion, "regardless of whether the same transactional facts are present in both suits."

In their reply, Defendants rely on a recent case from the District of Oregon, asserting to the extent *Aspex* and *Brain Life* contradict the Federal Circuit's earlier precedent, including *Foster* and *Nystrom*, they do not control. *See Mentor Graphics Corp. v. EVE-USA, Inc.*, 2014 WL 2533336, at *1 (D. Or. June 4, 2014). In *Mentor*, the court ordered supplemental briefing on the question whether the accused products at issue in Mentor's counterclaims were essentially the same as those it accused of patent infringement in an earlier action. Mentor's supplemental brief also raised the issue of whether, in light of recent Federal Circuit opinions, "the claim preclusion inquiry no longer turns on whether the presently and formerly accused products are 'essentially the same.'" *Id.*

The court noted that for at least two decades, the Federal Circuit had held judgment on a claim of infringement against a product barred a later infringement claim against a different product if the two products are essentially the same. *Id.* "By contrast, in two recent, three-judge panel opinions, the court has held that claim preclusion does not bar an infringement claim against a product that did not exist as of the prior judgment, 'essentially the same' or not." *Id.* (citing *Brain Life* and *Aspex*). According to the court in *Mentor*, the *Foster* line of cases cannot be reconciled with *Aspex* and *Brain Life*. "Because one three-judge panel cannot overrule another, *Newell Cos., Inc. v.*

35

*Kenny Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988)," the *Mentor* court held *Foster* controls "until the Federal Circuit sitting *en banc* says otherwise."   *Id.*   Thus, the Mentor court held Mentor's counterclaims were barred if they accuse products that were "essentially the same" as those accused in the 2006 action.   *Id.*

The Court does not need to determine whether *Aspex* and *Brain Life*, as opposed to *Foster*, controls.   An examination of *Aspex* and *Brain Life* reveal they are not applicable to the facts here. Specifically, Adaptix's current infringement allegations are not "temporally limited to acts occurring after final judgment was entered" February 2, 2015 in the California cases. *See Brain Life*, 746 F.3d at 1054.   If even for the simple reason that the cases were filed around the same time and were proceeding simultaneously, the Court cannot say Adaptix accuses "new acts of infringement, i.e., post-final judgment" acts in these cases.   *Id.* at 1056.

In sum, the Court finds Adaptix's direct and indirect infringement claims against Carrier Defendants are wholly barred by claim preclusion.   The Court now considers whether independently the *Kessler* doctrine also bars Adaptix's claims against Carrier Defendants.

## VII.

## THE *KESSLER* DOCTRINE

A.   **Applicable law**

The *Kessler* doctrine, first set forth by the Supreme Court in 1907 in *Kessler v. Eldred*, 206 U.S. 285 (1907), prohibits subsequent suits for patent infringement against a previous defendant or that defendant's customers and is a separate doctrine from claim preclusion.   The bar allows "an adjudged *non-infringer* to avoid repeated harassment for continuing its business as usual post-

judgment in a patent action where circumstances justify that result." *Brain Life*, 746 F.3d at 1056 (emphasis in original).

In *Kessler*, Eldred, the owner of a patent related to electric lighters, filed a patent infringement suit against a competitor, Kessler. Eldred sued Kessler first in Indiana, where the court found that Kessler's lighters did not infringe. 206 U.S. at 258–86. Eldred then filed suit in New York against one of Kessler's customers who sold the same lighters that were involved in the first action. Kessler intervened in that suit to indemnify his customer and also filed a separate suit against Eldred in Illinois, seeking to enjoin Eldred from further infringement suits based on Kessler's lighter that had already been adjudged to be non-infringing. *Id.* at 286.

The Supreme Court held that Kessler's judgment of non-infringement was a final resolution that Kessler had the right to manufacture, use, and sell his electric lighter: "This judgment, whether it proceeds upon good reasons or upon bad reasons, whether it was right or wrong, settled finally and everywhere, and so far as Eldred . . . was concerned, that Kessler had the right to manufacture, use, and sell the electric cigar lighter before the court." *Id.* at 288. "In other words, by prevailing in the first suit, Kessler had immunized his electric lighter from any future infringement suits brought by Eldred. Kessler was thus free to sell his lighters to other retailers, who could now re-sell the Kessler lighters without fear of an infringement suit brought by Eldred." *Speedtrack,* 2014 WL 1813292, *7.

The Federal Circuit has most recently applied the *Kessler* doctrine in *Brain Life*. Although the court in *Brain Life* stated the *Kessler* doctrine's "viability under current estoppel law may be of less value now than it was at the time it was handed down," it noted the court had recognized the *Kessler* doctrine in *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729 (Fed.Cir.1987), holding the

*Kessler* doctrine granted "a limited trade right which is 'the right to have that which [a court has determined] it lawfully produces freely bought and sold without restraint or interference." *Brain Life*, 746 F.3d at 1057 (quoting *MGA*, 827 F.2d at 734). "It is a right which attaches to its product – to a particular thing – as an article of lawful commerce." *Id.* Because the new machines in MGA were "admittedly the same in both suits," the *Kessler* doctrine gave LaSalle (an accused infringer) "rights with respect to specific products that had been held to be noninfringing, even when the specific *acts* of infringement would not be barred by claim preclusion because they occurred postfinal judgment." *Brain Life,* 746 F.3d at 1057.

The *Brain Life* court emphasized the following:

> [W]hen an alleged infringer prevails in demonstrating noninfringement, the specific accused device(s) acquires the 'status' of a noninfringing device. . . The status of an infringer is derived from the status imposed on the *thing* that is embraced by the asserted patent claims. And, when the devices in the first and second suits are 'essentially the same,' the 'new' product(s) also acquires the status of a noninfringing device vis-à-vis the same accusing party or its privies.

*Id.* (emphasis in original) (internal citations omitted).

The Federal Circuit concluded the *Kessler* doctrine "exists" and was "directly applicable to the case at bar." *Id.* at 1058. The court stated that "[w]hile MIDCO ultimately abandoned the method claims prior to trial, it could have continued to assert those claims." *Id.* "Thus, once the accused devices in the MIDCO litigation were adjudged to be noninfringing with respect to the asserted claims and judgment was entered as to all claims, Elekta was free to continue engaging in the accused commercial activity as a non-infringer." *Id*. Elekta continued manufacturing and selling products accused in the MIDCO litigation, some of the accused devices in the second suit having acquired a noninfringing status by virtue of the first case (GammaKnife, GammaPlan, and

38

SurgiPlan).  *Id.*  According to the Federal Circuit, Elekta was entitled to continue manufacturing, using, and selling those products without molestation from MIDCO or Brain Life.  *Id.*  Thus, "by virtue of gaining a final judgment of non-infringement in the first suit – where all of the claims were or could have been asserted against Elekta – the accused devices acquired a status as non-infringing devices, and Brain Life [was] barred from asserting that they infringe the same patent claims a second time." *Id.*

The Federal Circuit concluded Brain Life's allegations of infringement as to Elekta's GammaKnife, GammaPlan, and SurgiPlan products were barred by the *Kessler* doctrine.  However, Brain Life's allegations of infringement against the ERGO++ product were not barred by issue preclusion, claim preclusion, or the *Kessler* doctrine and could continue on remand.  *Id.* at 1059.

**B**.      **The parties' assertions**

According to Carrier Defendants, by virtue of Judge Grewal's decisions, the accused technology acquired the status of a non-infringing product, and the *Kessler* doctrine, as applied in *Brain Life*, is directly applicable here. Adaptix disagrees, asserting in *Brain Life* the defendants' *products* had acquired the status of non-infringing products as to the entire patent.  According to Adaptix, the defendants in the California cases filed two summary judgment motions, one directed to whether the product itself (the handset) infringed; the other directed to the following issue: if there was infringement, which entity (a defendant, as opposed to the end users) would be the direct infringer.  Even though the defendants ultimately prevailed in the California cases, Adaptix asserts Judge Grewal rejected the defendants' motion for summary judgment of noninfringement in which the defendants argued the handsets did not fall within the claims of the patent (because they did not "select" subcarriers). As to the motion the defendants directed to the products themselves, Adaptix

asserts Judge Grewal decided that a reasonable jury could find the Apple and HTC handsets infringed because there was evidence those products met all the limitations of the claims. *See, e.g.*, 1776 Case, Docket Entry # 403. According to Adaptix, in denying the motion, Judge Grewal rejected the defendants' "select" argument as contradicted by the patents' written description. *Id*. at 5 ("[Defendants'] argument cannot be squared with one of the embodiments of the patent that specifically envisions feedback on all carriers.").

## C.    Discussion

Adaptix contends the *Kessler* doctrine does not apply because Judge Grewal, in his order on the defendants' first motion for summary judgment, did not find the accused handsets noninfringing (he actually found a genuine dispute as to whether the transmission of CQI reports on all subcarriers each time the base station requests information meets the "selecting a set of candidate subcarriers" limitation); thus, according to Adaptix, the accused handsets never obtained the status of noninfringing devices.  Adaptix argues the Court should not extend the *Kessler* doctrine "to cover a situation, such as here, where the product does (or could be found to) infringe, but where the patent owner loses the first suit because someone other than the defendant was the direct infringer."  Cause No. 6:12cv17, Docket Entry # 352 at pg. 8.

Importantly, the only asserted claims in these cases are method claims. Infringement of a method claim requires a person to "have practiced all steps of the claimed method." *Lucent Techs., Inc. v. Gateway*, 580 F.3d 1301, 1317 (Fed.Cir.2009).  Regarding Adaptix's method claims against Carrier Defendants, the relevant question is not whether there is an infringing handset but whether the Carrier Defendants performed all of the steps of Adaptix's asserted method claims.  Carrier Defendants rely on Judge Grewal's order on the defendants' second motion for summary judgment,

wherein he found the asserted patent claims were not directly infringed because Adaptix failed to prove that all of the claimed method steps were performed by AT&T or Verizon. According to Carrier Defendants, Judge Grewal ultimately found noninfringement of all asserted claims and dismissed the California actions in their entirety with prejudice.

Carrier Defendants rely on *Molinaro v. Am. Tel. & Tel. Co.*, 460 F.Supp. 673 (E.D.Pa.1978), asserting courts have held the *Kessler* doctrine bars a plaintiff's second suit even though no determination of noninfringement was reached. *Id.* at 676 ("Our analysis of the applicability of the *Kessler* doctrine is not altered by the fact that the infringement question in the instant case was not actually litigated in the Delaware suit."). Defendants further assert the Federal Circuit in *Brain Life* did not expressly limit the *Kessler* doctrine based on how the final judgment of noninfringement was reached.

In *Brain Life*, the Federal Circuit applied the *Kessler* doctrine to method claims asserted against the defendants. 746 F.3d at 1058. According to the court, although Brain Life asserted only method claims in the second case, it was the making, using, or selling of the Elekta products that Brain Life asserted infringed or induced infringement of those asserted method claims. *Id.* at 1058, n. 2. "In other words, if the products are materially the same, it would be the same allegedly infringing commercial activity that is at issue in both proceedings," even though the first suit involved apparatus claims. *Id.*

Similarly, in *SpeedTrack*, another case involving method claims, the court granted summary judgment under the *Kessler* doctrine, explaining that "by failing to prevail in its infringement suit against Wal-Mart, SpeedTrack lost the right to assert any claims of the '360 patent against any customers of Endeca who used the accused software in 'essentially the same' manner as did Wal-

Mart." 2014 WL 1813292, *9.  Here, by failing to prevail in the California cases, Adaptix lost the right to assert the '212 patent against "essentially the same" use of LG and Pantech handsets.

Adaptix accuses AT&T and Verizon of directly infringing the same patent asserted in the California cases, where AT&T and Verizon were already held not to infringe.  As adjudged noninfringers, Carrier Defendants are free from "repeated harassment for continuing [their] business as usual post-final judgment." *Brain Life,* 746 F.3d at 1056.  The court in *SpeedTrack* held that new theories involving the same, already-asserted claims are also barred by the *Kessler* doctrine. 2014 WL 1813292, *9 (barring a plaintiff from pursuing infringement under the doctrine of equivalents even though the plaintiff had not pursued that particular infringement theory in the first case). Thus, Adaptix's claims against AT&T and Verizon for indirect infringement of the '212 patent are also barred by the *Kessler* doctrine, even though they were not asserted in the California cases.

In sum, the Court finds the *Kessler* doctrine wholly bars Adaptix's claims against AT&T and Verizon in the present cases, separate from claim preclusion.

## VIII.

### ADAPTIX'S CONTRIBUTORY INFRINGEMENT CLAIMS

The Court now considers the effect of preclusion on Adaptix's claims of contributory infringement against the manufacturers LG and Pantech.  "[I]t is well settled that there can be no inducement or contributory infringement absent an underlying direct infringement." *Novartis Pharm. Corp. v. Eon Labs Mfg.*, 363 F.3d 1306, 1308 (Fed. Cir. 2004). Here, for its contributory infringement theory against LG and Pantech, Adaptix identifies AT&T, Verizon, and their respective customers as the direct infringers.

42

In light of the Court's above findings, Carrier Defendants' customers are the only possible direct infringers remaining.   In *Nystrom*, the Federal Circuit extended the benefits of claim preclusion to the distributors of the party who had litigated and won the prior suit. *Nystrom*, 580 F.3d 1281, 1284-86.   Carrier Defendants assert their customers enjoy the preclusive effect of the California cases because they are in privity with AT&T and Verizon for purposes of claim preclusion as purchasers of the products that AT&T and Verizon are permitted to sell.

As the Fifth Circuit has recognized, "[a] non-party defendant can assert res judicata so long as it is in 'privity' with the named defendant." *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992). In the context of claim preclusion, "'[p]rivity' is recognized as a broad concept, which requires [the court] to look to the surrounding circumstances to determine whether claim preclusion is justified." *Id.* "It has come to be recognized that the privity label simply expresses a conclusion that preclusion is proper. Modern decisions search directly for circumstances that justify preclusion." *Id.* (quoting 18 C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4449, at 418-19 (1981)). "In short, parties which are sufficiently related to merit the application of claim preclusion are in privity." *Russell*, 962 F.2d at 1174.

The Court finds Carrier Defendants and their customers are sufficiently related to merit application of claim preclusion, precluding any finding of direct infringement by Carrier Defendants' customers.   The *Kessler* doctrine also extends to customers. In *Kessler*, the Supreme Court held it was "unnecessary to inquire" whether the judgment between Kessler and Eldred created a separate right for the customer because, "[l]eaving entirely out of view any rights which Kessler's customers have or may have, it is Kessler's right that those customers should, inrespect of the articles before the court in the previous judgment, be let alone by Eldred, and it is Eldred's duty to let them alone."

206 U.S. at 288-89. And in *Brain Life*, the Federal Circuit held the *Kessler* Doctrine protects against allegations of infringement "even when the acts of infringement occurred post-final judgment and even when it was third parties who allegedly engaged in those acts of infringement." 746 F.3d at 1056. Similarly, in *SpeedTrack*, the court emphasized the plaintiff had lost the right to assert any claims of the patent-in-suit against any customers of the previous defendant. 2014 WL 1813292, at *9. Thus, the *Kessler* doctrine also precludes any finding of direct infringement of the '212 patent by AT&T's and Verizon's customers.

Without direct infringement, there can be no contributory infringement.  Thus, the Court recommends the manufacturers (LG and Pantech) be granted summary judgment of no contributory infringement.

## IX.

## RECOMMENDATIONS

As to **all defendants (whether carrier or manufacturer)**, the Court finds issue preclusion bars Adaptix from arguing that any defendant directly infringes the method claims of the '212 patent in the following ways: (1) that any defendant directly infringes the method claims by selling LTE devices (*SiRF* theory); and (2) that AT&T or Verizon directly infringe the method claims by controlling the use of their respective customers' LTE devices.

As to **Carrier Defendants**, the Court finds Adaptix's direct and indirect infringement claims against Carrier Defendants are barred by claim preclusion and the separate *Kessler* Doctrine.  Having found Adaptix's infringement claims are wholly barred by claim preclusion and the separate *Kessler* doctrine, the Court recommends Carrier Defendants' motion for summary judgment as to all claims asserted by Adaptix against them and their customers be granted.

44

Because there is no underlying direct infringement by the carriers or their customers in light of claim preclusion and the *Kessler* doctrine, the Court recommends the **Manufacturer Defendants** (LG and Pantech) should be granted summary judgment of no contributory infringement.

Having recommended summary judgment be granted in Defendants' favor for the above stated reasons and to conserve judicial resources, the Court will not address the remaining summary judgment motions at this time.  (These are found at Cause No. 6:12cv17, Docket Entry #s 244, 245, 246, 249, and 315.).  Based on the foregoing, it is

**RECOMMENDED** Defendants' Motion for Summary Judgment on Preclusion Grounds (Cause No. 6:12cv17, Docket Entry # 340)(Cause No. 6:12cv20, Docket Entry # 330)(Cause No. 6:12cv120, Docket Entry # 317) be **GRANTED.**  It is further

**RECOMMENDED** the Court grant summary judgment in Defendants' favor that:

(1) issue preclusion bars Adaptix from arguing (a) that any Defendant directly infringes the method claims of the '212 patent by selling LTE devices (Adaptix's *SiRF* theory), and (b) that AT&T and Verizon directly infringe the method claims of the '212 patent by controlling the use of their respective customers' LTE devices;

(2) claim preclusion bars all of Adaptix's claims against AT&T and Verizon for infringement of the '212 patent;

(3) the *Kessler* Doctrine bars all of Adaptix's claims against AT&T and Verizon for infringement of the '212 patent; and

(4) LG and Pantech are not liable for contributory infringement of the '212 patent.

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.  28 U.S.C.A. 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice.  *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir.1988).

**SIGNED this 12th day of May, 2015.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE

46