## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| ADAPTIX, INC., ) | |
|        Plaintiff, ) | |
|    v. ) | |
| ) | Civil Action No. 6:12-cv-00017 |
| AT&T MOBILITY LLC, LG ) | |
| ELECTRONICS, INC., and ) | |
| LG ELECTRONICS USA, INC., ) | |
|       Defendants. ) | |
| ) | |
| ADAPTIX, INC., ) | |
|        Plaintiff, ) | |
|    v. ) | |
| ) | Civil Action No. 6:12-cv-00020 |
| PANTECH WIRELESS, INC. and ) | |
| CELLCO PARTNERSHIP *d/b/a* ) | |
| VERIZON WIRELESS, ) | |
|       Defendants. ) | |
| ) | |
| ADAPTIX, INC., ) | |
|        Plaintiff, ) | |
|    v. ) | |
| ) | Civil Action No. 6:12-cv-00120 |
| CELLCO PARTNERSHIP *d/b/a* ) | |
| VERIZON WIRELESS, LG ) | |
| ELECTRONICS, INC. and ) | |
| LG ELECTRONICS USA, INC., ) | |
|       Defendants. ) | |

## ADAPTIX, INC.'S OBJECTIONS TO THE MAGISTRATE REPORT AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PRECLUSION GROUNDS

TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................. 1

II.    ADAPTIX'S OBJECTIONS ........................................................................................... 2

   1.   Claim Preclusion Does Not Bar Adaptix's Claims Against the Carrier Defendants ........... 2

      A.   Acquiescence ................................................................................................................ 3

      B.   The AIA ........................................................................................................................ 4

      C.   Temporal Limits .......................................................................................................... 5

   2.   The *Kessler* Doctrine Does Not Bar Adaptix's Infringement Claims Against the Carrier Defendants ................................................................................................................................. 6

   3.   Neither Claim Preclusion Nor the *Kessler* Doctrine Bars a Finding of Contributory Infringement by LG and Pantech .............................................................................................. 9

III.    CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

CASES

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
  672 F.3d 1335 (Fed. Cir. 2012) ........................................................................... 5, 6

*Brain Life, LLC v. Elekta Inc.*,
  746 F.3d 1045 (Fed. Cir. 2014) ........................................................................ 5, 6, 9

*In the Matter of Super Van Inc.*,
  92 F.3d 366 (5th Cir. 1996) ..................................................................................... 3

*Molinaro v. Am. Tel. & Tel. Co.*,
  460 F.Supp. 673 (E.D.Pa. 1978) .............................................................................. 8

*Rubber Tire Wheel Co. v. Goodyear Co.*,
  232 U.S. 413 (1914) ................................................................................................. 8

*Russell v. SunAmerica Securities, Inc.*, 962 F.2d 1169 (5th Cir. 1992) ....................... 12

*Shoom, Inc. v. Electronic Imaging Sys. of Am., Inc.*,
  2011 WL 4595212 (N.D. Cal. Oct. 4, 2011) .................................................... 7, 8, 11

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ................................................................................................. 3

STATUTES

28 U.S.C. § 636(b)(1)(A) ................................................................................................. 1

Fed. R. Civ. P. 72(b)(3) .................................................................................................... 1

Fed. R. Civ. P. 72(a) ......................................................................................................... 1

TREATISES

*Restatement (Second) of Judgments* §26(1)(a) (1982) .................................................... 3

Under 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and Local Rule CV-72, Plaintiff, ADAPTIX, Inc. ("Adaptix"), objects to certain portions of Judge Craven's May 12, 2015 Report and Recommendation regarding Defendants' Motion for Summary Judgment on Preclusion Grounds ("R&R").  *See* Dkt. 363 (12-cv-00017).[1]

## I.    INTRODUCTION

This Court must determine *de novo* any part of the R&R to which Adaptix has objected. Fed. R. Civ. P. 72(b)(3).

The R&R erred in finding that the California court decided the "same theories or causes of action" as asserted here.  (R&R at 2.)  Adaptix asserts in these Texas cases that the Defendants *contribute* to the direct infringement by the end-users, a cause of action the California court did not decide.[2]

As explained below, the California court decided only (1) a reasonable jury *could* find that use of the Apple/HTC handsets *directly infringed*, and (2) the end-users, rather than the Carriers or handset manufacturers, would be the direct infringers.  Even if this Court decides that these decisions as to *direct* infringement would apply equally to the use of LG/Pantech handsets,[3] Adaptix may pursue contributory infringement.

---

[1] For ease of reference, and convenience of the Court, all docket citations are to Case No. 6:12-cv-00017.

[2] The California court dismissed the cases because Adaptix had not named the end users as parties.

[3] This Court might find no direct infringement either by finding issue preclusion, as the R&R recommended, or by denying issue preclusion but agreeing with the California court on the merits. But whichever way this Court goes on that point, the decision of the Federal Circuit on the California appeal should resolve the direct infringement issue, for all cases.  For that reason, although Adaptix objects to the R&R's finding of issue preclusion, (R&R at 18), Adaptix will simply rely on its prior briefing, (Dkt. 348 at 6-8, Dkt. 352 at 1-3), as to why.

In addition, the R&R overlooked that the California action did not reach the issue of use of LG/Pantech handsets by the employees of Defendants.  (See Dkt. 348 at 7, Dkt. 352 at 2-3.)  At a minimum, that issue of direct infringement remains for trial.

## II.     ADAPTIX'S OBJECTIONS

### 1.   Claim Preclusion Does Not Bar Adaptix's Claims Against the Carrier Defendants

Adaptix objects to the R&R's finding that "Adaptix's direct and indirect claims against Carrier Defendants are wholly barred by claim preclusion."  (R&R at 36.)

Simply stated, the doctrine of claim preclusion, which is based on claim splitting, holds that a final judgment—*whether a victory or loss*—precludes subsequent pursuit by the plaintiff of portions of a claim that could have been included in the complaint, *when filed*.  (Dkt. 348 at 10).  Here, as Adaptix pointed out in its response to the motion (*Id*. at 9-10), the only way that a Defendant could plausibly argue claim preclusion would be to argue that Adaptix could have asserted its claim for use of the LG/Pantech handsets in the California actions, which actions Adaptix had limited to the use of Apple/HTC handsets.

When Adaptix decided to sue the various carriers and handset manufacturers, beginning in 2012, it filed separate suits for each carrier/handset-manufacturer pair.  (Dkt. 348 at 12.)  For reasons explained in detail, (*Id*. at 12-13), Adaptix believed that the America Invents Act (AIA) required separate suits.  In the 24 cases that Adaptix has filed on the patents asserted here, *no* defendant in any case had ever questioned that the AIA required filing separate suits against the various carriers/handset-manufacture pairs.  (*Id*. at 15.)  Nor has any defendant in any case argued that Adaptix should have combined all of its claims against a carrier in a single suit. Indeed, Defendants here did not even make that argument in the motion they filed.  (*Id*. at 15-16.)  Only after Adaptix pointed out that Defendants' motion misunderstood claim preclusion, did Defendants, in their Reply (Dkt. 351 at 5), belatedly adopt this argument.

A.  Acquiescence

The Fifth Circuit has joined other circuits in adopting the *Restatement (Second) of Judgments* §26(1)(a) (1982), which requires for claim preclusion to apply that where a plaintiff is simultaneously maintaining separate actions on parts of the same claim, during that simultaneous maintenance a defendant *must* "make the objection that another action is pending based on the same claim." *In the Matter of Super Van Inc.*, 92 F.3d 366, 371 (5th Cir. 1996).  Inaction - by failure to object - serves as acquiescence, barring preclusion.   Quoting from the *Restatement (Second)*, *Super Van* spells this out, holding that failing to object to the separate maintenance, by itself, would constitute acquiescence, which bars assertion of claim preclusion. 92 F.3d at 371. The court requires an *objection* to invoke claim preclusion to prevent "encouraging litigants to engage in dishonest (or at least less than forthright) behavior to gain tactical advantage." *Id*. But here, the Defendants *never* objected, apparently because they never believed that Adaptix had split its claim.

The R&R stated that it "is not persuaded Carrier Defendants acquiesced in Adaptix's simultaneous maintenance of nine separate actions against them." (R&R at 24.)  This statement mistakenly implied that Adaptix has the burden of proof on preclusion defenses. But "[c]laim preclusion, like issue preclusion, is an affirmative defense.  Ordinarily, it is incumbent on the defendant to plead and prove such a defense, and we have never recognized claim preclusion as an exception to that general rule[.] '[A] party asserting preclusion must carry the burden of establishing all necessary elements.'" *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) (internal citations omitted).

Defendants thus needed to provide *evidence* of having made an objection that another action was pending against them. As to this, the R&R stated that "Carrier Defendants *state* they

have objected to the serial suits Adaptix filed against them and have argued this fact in support of their motion for attorneys' fees in the California cases."  (R&R at 24.) (emphasis added).  But the only reference in the record on which the R&R could have relied to make that statement, was a mention by Defendant three pages from an attorney's fees brief Defendants filed in the California actions on April 9, 2015.  (*See* Defs. Reply, Dkt. 351.)

It turns out, however, that Defendants had filed that brief on April 9, 2015, *after* final judgment in the California cases, thus it would not have met the requirement to make an objection *during* the first suit.  But, of even more importance, the brief <u>did not object</u> to—or even comment on—Adaptix's filing of separate actions against each carrier/handset-manufacturer pair.[4]

In any event, *Super Van* and the *Restatement (Second) of Judgments* would require that Defendants had made a specific objection of claim splitting during the California action, which did not happen. Neither AT&T nor Verizon ever objected anywhere to Adaptix's filing of separate suits for each carrier/handset-manufacturer pair.

The acquiescence issue, by itself, disposes of the entire claim preclusion motion.

B.  <u>The AIA</u>

As Adaptix explained in its Opposition, the AIA would bar including multiple handset manufacturers in the same suit.  (Dkt. 348 at 12.)  Because its claim against a carrier for using the handsets of a particular manufacturer arose out of a common nucleus of operative facts, Adaptix was obligated to include the carrier and the handset manufacturer in the same suit as to the use of those handsets.  (*Id.*)  The R&R does not discuss any of that law, but merely cites

---

[4] Rather, the brief complained about Adaptix's filing new suits against HTC after HTC, during the first suit, introduced a new product. The brief argued that, for efficiency, the new product should have been simply added to the existing suit against HTC. Because the new suit involved a new newly introduced product, the defendants there could not, and thus did not, raise a claim splitting issue.

without authority, in a footnote (R&R at 21, n. 8) the Carriers' assertion (never previously raised), that Adaptix should have filed separate suits against each individual handset manufacturer, instead of including the handset manufacturers in suits against the Carriers.

But this only reinforces why the law requires raising these objections during simultaneous maintenance, to allow the court to timely decide the issue and, if required, realign the parties and consolidate, where necessary, the actions.  As *Super Van* held, to proceed otherwise encourages litigants to "engage in dishonest (or at least less than forthright) behavior to gain tactical advantage." *Super Van,* 92 F.3d at 371.

C.  Temporal Limits

The Federal Circuit, in *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1342-45 (Fed. Cir. 2012), held that claim preclusion (with one exception, discussed below[5]) applies only to acts of infringement that occurred *prior to the filing of the complaint* in the action in which the judgment had been entered. Thus, if the California action *did* create claim preclusion, that preclusion would be limited to infringement before March 2012, when those actions were filed.

The R&R, however, did not follow that holding of *Aspex,* and ignored the extensive discussion in *Aspex* of the many cases that had reached that same result. 672 F.3d at 1342-43. Instead, the R&R referred to language from the later opinion in *Brain Life*, *LLC v. Elekta Inc*., 746 F.3d 1045 (Fed. Cir. 2014), seemingly extending claim preclusion to the date of final judgment in the prior action, rather than the date of filing. There was, however, no inconsistency

---

[5] *Aspex* discussed that a cutoff date after the filing date might be used where the parties had agreed to try in the first case liability for acts between the filing and that cutoff date.  *Aspex,* 672 F.3d at 1345.  The Motion did not raise the possibility of such an agreement, however, and thus the R&R not discuss the issue. In any event, on a motion for summary judgement, the question of an agreement as to a post-filing cutoff date would be a disputed issue of fact.

between *Aspex* and *Brain Life*. In *Brain Life*, the opinion referred to the date of final judgment

only because the acts of infringement for which plaintiff in that case had been seeking a recovery

had all occurred *after* the date of final judgment.  *See* Opening Brief of Brain Life, LLC, 2013

WL 2152590, *27 (Fed. Cir. May 2, 2013). Thus the briefing, and the opinion, referred to the

date of judgment because that was the date the parties had presented.

But the error in the R&R went beyond wrongly deciding that the cutoff date for claim

preclusion could not have been the date of filing in the California action. The R&R also found

claim preclusion for acts of infringement that have occurred, or would occur, even *after* the date

of the California judgment, despite contrary holdings in both *Aspex* and *Brain Life* on this precise

issue. The explanation (R&R at 34-36) was that, as these Texas cases had been filed at about the

same time as, and had proceeded simultaneously with, the California cases, the continuing post-

final judgment acts were not "new" acts of infringement because the products had not changed.

But, as *Brain Life* and *Aspex* explicitly held, claim preclusion does not bar a patent holder from

suing for acts of infringement after the cutoff date, even as to the use of products *identical* to

products used during the earlier period. Stated differently, for claim preclusion purposes,

whether an act of infringement is a "new" act depends entirely on the *date* the act occurs, not on

whether the act (or product) differs from earlier acts (or products).[6]

### 2. The *Kessler* Doctrine Does Not Bar Adaptix's Infringement Claims Against the Carrier Defendants

Adaptix objects to the R&R's finding that "the *Kessler* doctrine wholly bars Adaptix's

claims against AT&T and Verizon in the present cases."  (R&R at 42.)  The R&R reasoned that

---

[6] The R&R (at 31, 35-36) describes, in passing, arguments that Defendants had raised based upon certain cases (*Foster, Nystrom, Mentor Graphics, Newell*). Since the R&R did not adopt those arguments (or rely upon those cases) on this issue, this Objection will not use its limited real estate to discuss them. If, however, Defendants assert these arguments as an alternate basis for accepting the recommendation, Adaptix will claim a right to reply.

simply "by failing to prevail" in the California cases, Adaptix lost any and all rights to assert the same patent here.  The R&R committed legal error in holding irrelevant the *reason* why Adaptix failed to prevail.  *See, e.g., Shoom, Inc. v. Electronic Imaging Sys. of Am., Inc.*, 07-cv-05612-JSW, 2011 WL 4595212, *4 (N.D. Cal. Oct. 4, 2011) (the *Kessler* doctrine does not apply to suits accusing customers of infringing use Shooms' products, because their use could practice the steps of the asserted claims even if Shooms' use did not.)

*Kessler v. Eldred*, 206 U.S. 285, 289 (1907) held that because a first action against a manufacturer had found that the accused product did not have the infringing features, the patent owner cannot bring a later suit against the manufacturer's customer alleging that the product *did* have those features.  On those facts, *Kessler* seems well reasoned.

By contrast, the California court reached the <u>opposite</u> result, finding that a reasonable jury could find that the accused products *did* possess all the infringing features.  *See, e.g.*, Case No. 5:13-cv-01776-PSG, Dkt. 403 at 4 ("…the court finds that a reasonable jury could make … a finding" of direct infringement).  But the court dismissed the action – which was for direct infringement – after holding that the end-users, who were not parties, would be the direct infringers.  *See, e.g.,* Case No. 5:13-cv-01776-PSG, Dkt. 405 ("While there is evidence that handsets operated by end users have been used to send Mode 3 reports to base stations, because nothing suggests any Defendant is sending those reports, that evidence alone is insufficient to establish direct infringement by Defendants.")

The R&R would ignore that distinction, and needlessly extend the *Kessler* decision to any suit where there had been a finding of that a defendant had not infringed a claim, regardless of the basis for that finding. For instance, if a court dismissed a suit against a foreign TV manufacturer (e.g., Sony) solely because its manufacture and sale of an infringing product had

occurred offshore, the R&R would dismiss a resulting suit against the United States retailer, no matter how clear-cut and flagrant its infringement.[7]  No case interpreting *Kessler* suggests such a perverse result, nor can any policy reason justify it.[8]

*Kessler* did not present a situation where the defendant in the first case avoids liability solely for not being the *actual* seller, importer, or user of an infringing product.  In that situation, there would be no reason (and certainly none suggested by language in *Kessler*) to prevent the patent owner from suing the person who actually sold, imported, or used the infringing product. Rather, to deny that right would seem perverse.

The courts allow suit against a customer, over a *Kessler* objection, where the customer's actions differ from those of its supplier.  In *Rubber Tire Wheel Co. v. Goodyear Co.*, 232 U.S. 413 (1914), the Supreme Court allowed the patent owner to pursue an infringement action against a customer of Goodyear, the defendant in the first suit, where the claim in the customer suit was that the customer was itself manufacturing an independent product, albeit by using materials purchased from Goodyear.  The Court distinguished *Kessler* because "when other persons become manufacturers on their own behalf, … [Goodyear] cannot insist upon their being protected from suit for infringement by reason merely of [Goodyear's] right to make and sell." 232 U.S. at 419.  In *Shoom*, 2011, WL 4595212 at *1-*2, Shoom, citing *Kessler*, asked the court to enjoin suit against Shoom's customers.  The court denied the motion, stating that the

---

[7] As another example, in a first suit a court might find noninfringement because the accused uses occurred before the patent issued.  The R&R would, pointlessly, dismiss a second suit for uses after the patent issued.

[8] The R&R (at 41) mentioned that *Molinaro v. Am. Tel. & Tel. Co.*, 460 F.Supp. 673 (E.D.Pa. 1978), invoked *Kessler* even though the infringement issue had not been actually litigated in the earlier suit. But in that case, the complaint had been dismissed with prejudice in the earlier suit as a Rule 37 *sanction* for failure to comply with discovery. *Molinaro* explained that it was invoking *Kessler* despite the infringement issue not having been actually litigated "to deter those who might be tempted to such conduct in the absence of such a deterrent."

customers' use of Shoom's products could practice the steps of the asserted claims, even if Shoom's use does not." *Id*. at 4.

The R&R (at 41) referred to *Brain Life's* invocation of the *Kessler* doctrine. But again, as in *Kessler* itself, in the first action in *Brain Life* the defendant's products had been adjudged to *not have* the infringing features of the patents' product claims, and in the second action the patent owner switched to asserting method claims drawn to the use of those same products. 746 F.3d at 1058, n. 2. Here, by contrast, the California court held that the jury could find that the product *had* the infringing features, and thus, unlike *Brain Life* and *Kessler*, the product never achieved the status of a noninfringing product.  Of equal importance, *Brain Life* was not a case, like here, where the earlier case had been dismissed simply because the complaint had not named the direct infringer. The policy considerations differ radically.

Finally, given the comments in *Brain Life* regarding the questionable "continuing force of the Kessler Doctrine," and the observation that its "viability" may be of less value now, 745 F.3d at 1058, the R&R erred in aggressively expanding this anachronistic doctrine to create clearly perverse results.

The Court should therefore reject the R&R's finding that the *Kessler* doctrine bars Adaptix's infringement claims against the Carrier Defendants.

### 3.   Neither Claim Preclusion Nor the *Kessler* Doctrine Bars a Finding of Contributory Infringement by LG and Pantech

Adaptix objects to the R&R's recommendation that "the manufacturers (LG and Pantech) be granted summary judgment of no contributory infringement."  (R&R at 44.)  In so recommending, the R&R first found that the end-users were in privity with the Carrier Defendants and thus, if the Carrier Defendants were not direct infringers, then neither were LG

and Pantech.  Then, the R&R held that since there were no direct infringers, there could be no contributory infringement.  (R&R at 43.)  On both accounts, the R&R erred.

As noted above, the California court ruled that a reasonable jury could find, based on record evidence, that use of the Apple and HTC handsets directly infringe the asserted claims. It would seem that a reasonable Texas jury could find likewise with respect to LG and Pantech handsets. So there are, or could be, direct infringers.

The R&R ruled, however, end users are in "privity" with the Carrier Defendants.  But in privity as to what issue?  The California court concluded that the Carrier Defendants do not directly infringe, but *only* because *the end users* would be the direct infringers. They thus cannot be in privity on this issue, as it seems that their interests are adverse. But even if the Carrier Defendants and the end users were in privity, the California court decision – that a reasonable jury could find that the end users *directly infringe* – if applied to the end user as a party, would scarcely let the end user off the hook.

The Carrier Defendants and the end users, however, do have a common interest (and thus might be in privity) on the issue of whether the products themselves infringe.  On that issue, however, the California court ruled *against* the Carrier Defendants, holding a reasonable jury could find that the products infringe. A finding of privity as to that issue would thus not help LG and Pantech, either.

Similarly, the *Kessler* doctrine might have helped the end-users if the California court had ruled that the products do *not* infringe.  But again, that court ruled that a reasonable jury could find the products *do* infringe.  As detailed above, the *Kessler* doctrine does not even preclude a suit against the customer of an adjudged non-infringer where the customers' use of

the non-infringer's product could differ from the non-infringer's use of the same product. *Shoom*, 2011 WL 4595212 at *4.

In arguing their motion for summary judgment in California, AT&T and Verizon disclaimed any overlap or similarity between their own use of the accused devices and use by their customers:  "ADAPTIX does not argue that [AT&T and Verizon] are themselves performing any of the asserted method steps.  <u>Those steps are performed, if at all, by the end user operating the subscriber device</u>."  Case No. 5:13-cv-01776-PSG, Dkt. 374 at 55.  And, per Verizon's own counsel during the same hearing, "[t]hose requirements are outside of the control of Verizon… [t]hey depend on actions by the end user."  *Id.* at 85.  Thus, in these cases, as in *Shoom*, the end users could practice the steps of the patented method even if the Carrier Defendants do not.  *Compare Shoom*, 2011 WL 4595212 at *4 ("The Court finds that, on the existing record, it is not clear whether or not Shoom's customers' use of Shoom's products would practice the steps of the asserted claims of the '837 patent, even if Shoom does not.  Thus, the Court shall not issue an injunction.").[9]

By AT&T and Verizon's own admissions, and under *Shoom*, the *Kessler* doctrine does not even preclude a *suit* against the Carriers' customers for infringement.[10]  Much less then does the *Kessler* doctrine preclude, as the R&R recommends, a *finding* of direct infringement by an end user—who, as here, is not a named defendant—as an element of a claim for contributory infringement against a non-party to the previous litigation (e.g., LG and Pantech).

_____

[9] The circumstances in the present cases are even less favorable for applying the *Kessler* doctrine than in *Shoom*, where Shoom failed to establish that its customers' use of the accused product was the same as its own.  Here, the Carriers themselves *admitted* to the California court that their customer, if anyone, carries out the steps of the asserted claims.
[10] Because the Carriers prevailed on these same arguments before in California, judicial estoppel would preclude them from arguing otherwise here.

Neither *Kessler*, nor the opinions of the Federal Circuit or of district courts applying *Kessler*, even contemplate, much less support, such a sweeping application of the *Kessler* doctrine.  Unlike in *Kessler*, Adaptix did not here, or in the California cases, sue the Carriers' customers.[11]

Similarly, the doctrine of claim preclusion does not foreclose a finding of direct infringement by end users of the LG and Pantech products.[12]

The R&R's recommendation to grant LG and Pantech summary judgment of no contributory infringement would extend the application of the *Kessler* and claim preclusion doctrines beyond all recognized, and reasonable, limits.

### III.     CONCLUSION

For the reasons set forth in Adaptix's Objections, the Court should not adopt the Magistrate's Report and Recommendations.

Dated:  May 29, 2015                              Respectfully submitted,

/s/      *Paul J. Hayes*
Paul J. Hayes
Kevin Gannon (*pro hac vice*)
James J. Foster
Michael J. Ercolini
**HAYES, MESSINA, GILMAN & HAYES LLC**

---

[11] *Compare Kessler* at 289 ("[T]he question here is whether, <u>by bringing a suit against one of Kessler's customers</u>, Eldred has violated the right of Kessler.  No one wishes to buy anything <u>if with it he must buy a law suit</u>") (emphasis added).

[12] The authority cited by the R&R is inapposite to the present circumstances.  In *Russell v. SunAmerica Securities, Inc.*, the Fifth Circuit held that the relationship between Southmark (the corporation) and SunAmerica (its purchaser) was close enough to justify the application of claim preclusion so as to bar a second suit against the purchaser based on the same cause of action as the first suit against the corporation.  962 F.2d 1169, 1173 (5th Cir. 1992).  The admittedly narrow opinion in *Russell*, however, did not hold (or even suggest) that claim preclusion should be extended to circumstances where there is no second suit against a party allegedly—or even actually—in privity with the prevailing party from a first suit—i.e., the purchaser in *Russell*, the end user in these cases.

200 State Street, 6th Floor
Boston, MA 02109
Tel: (617) 345-6900
Fax: (617) 443-1999
Email: phayes@hayesmessina.com
Email: kgannon@hayesmessina.com
Email: jfoster@hayesmessina.com
Email: mercolini@hayesmessina.com

Craig Tadlock
Texas State Bar No. 00791766
Keith Smiley
Texas State Bar No. 24067869
**TADLOCK LAW FIRM PLLC**
2701 Dallas Parkway, Suite 360
Plano, TX 75093
Tel: (903) 730-6789
Email: craig@tadlocklawfirm.com
Email: keith@tadlocklawfirm.com

**ATTORNEYS FOR ADAPTIX, INC.**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was filed electronically in compliance with the Local Rule CV-5 on May 29, 2015.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

/s/      *Michael J. Ercolini*